IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— )
                                                        )
**PRO PUBLICA, INC.,**                    )
                                                        )     Case No. 1:25-cv-4302
                            Plaintiff,          )
                                                        )
            - against -                         )
                                                        )     **COMPLAINT FOR**
**UNITED STATES DEPARTMENT OF**  )     **VIOLATION OF THE FREEDOM**
**STATE,**                                       )     **OF INFORMATION ACT, 5 U.S.C.**
                                                        )     **§ 552 _et seq_.**
                            Defendant.       )
———————————————————— )

Plaintiff Pro Publica, Inc. ("ProPublica" or "Plaintiff"), by and through its undersigned

attorneys, bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 _et_

_seq_., for declaratory, injunctive and other appropriate relief to compel the disclosures and release

of documents from Defendant Department of State ("State" or "DOS").  In support thereof,

Plaintiff alleges as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff ProPublica is an independent, nonprofit newsroom that produces

investigative journalism.  ProPublica seeks to report on communications regarding the deportation of

238 Venezuelan and 23 El Salvadoran immigrants from the United States to the prison Centro de

Confinamiento del Terrorismo (CECOT) in El Salvador.

2.      Plaintiff submitted a FOIA Request to Defendant State for records regarding cable

traffic from the State Department to and from the U.S. Embassy in El Salvador regarding the

deportations.  The Request also asked for any contracts or other fiduciary instruments involved

in the payment of $6 million from the U.S. to El Salvador. The information would help the

public to better understand the policy and rationale behind the decision to send undocumented immigrants to El Salvador.  *See* Exhibit A.

3.      The Department of State facilitated the arrangements with the Salvadoran government to take the deportees. A State Department official submitted a declaration stating that there had been weeks of talks "at the highest levels" including ones involving Secretary of State Marco Rubio.[1]  The U.S. Government is paying El Salvador $6 million to hold the detainees for at least a year.

4.      The Freedom of Information Act "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties."  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted).  "[D]isclosure, not secrecy, is the dominant objective" of FOIA.  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

5.      Defendant State has failed to comply with its obligations under FOIA.  As of the date of this filing, Defendant has merely acknowledged Plaintiffs' Request but has failed to produce a single document.

6.      Plaintiff brings this action to compel Defendant to immediately process and release to Plaintiffs all responsive records that it has unlawfully withheld.

## PARTIES

7.      Plaintiff ProPublica is an independent, nonprofit newsroom.  Its mission is to expose abuses of power and betrayals of the public trust by government, business, and other

---

[1] N. Lanard and I. Dias, "You're Here Because of Your Tattoos", Mother Jones (Mar. 26, 2025), https://www.motherjones.com/politics/2025/03/trump-el-salvador-venezuela-deportation-prison-cecot-bukele/.

institutions, using the moral force of investigative journalism to spur reform through the sustained spotlighting of wrongdoing.  It digs deep into important issues, shining a light on abuses of power and betrayals of public trust—and it sticks with those issues as long as it takes to hold power to account. With a team of more than 150 editorial staffers, ProPublica covers a range of topics including government and politics, business, criminal justice, the environment, education, health care, immigration, and technology. It focuses on stories with the potential to spur real-world impact. Among other positive changes, its reporting has contributed to the passage of new laws; reversals of harmful policies and practices; and accountability for leaders at local, state and national levels. ProPublica is a 501(c)(3) corporation headquartered in New York, New York.

8.     Defendant Department of State is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).  DOS has possession and control over the documents and information requested by Plaintiffs.

## JURISDICTION AND VENUE

9.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

10.     Venue in the Southern District of New York is proper under 5 U.S.C. § 552(a)(4)(B) because ProPublica has its place of business in New York City within this District.

## FACTUAL BACKGROUND

11.    On March 15, 2025, President Trump invoked the Alien Enemies Act to arrest and remove Venezuelan citizens in the United States who are not naturalized or lawful permanent residents and who are allegedly members of the gang Tren de Aragua ("TdA").[2]  In the first 100 days of the Trump Administration, DOS claims that it led the transfer of MS-13 and Tren De Aragua members to El Salvador "as part of expanded security cooperation and deported hundreds of MS-13 and TdA affiliated aliens."[3]

12.    The transfer of migrants from the United States to El Salvador and their subsequent imprisonment in CECOT has raised a host of domestic and international law questions.  "They include the invocation of the Alien Enemies Act (which a Trump-appointed judge in the Southern District of Texas recently found was indeed improperly invoked with respect to purported actions of Tren de Aragua), the absence of due process for those rendered, the constitutional prohibition on punishment without charge or trial, possible violation of U.S. non-refoulment obligations given the risk of abuse—including torture—at their destination, arbitrary detention, the reach of habeas corpus abroad and constructive custody, and enforced disappearance."[4]

13.    A declaration by a Senior Bureau Official within the Bureau of Western Hemisphere Affairs of the Department of State, Michael Kozak, states "U.S. government officials from the White House and Department of State … have negotiated at the highest levels

---

[2] Proclamation by the President "Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua" (Mar. 15, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/invocation-of-the-alien-enemies-act-regarding-the-invasion-of-the-united-states-by-tren-de-aragua/.

[3] 100 Days of an America First State Department, https://www.state.gov/100days/?utm_source=homepage&utm_medium=headline_bar&utm_campaign=100days#illegal-immigration.

[4] B. Finucane, "The Dirty Deal With El Salvador" from Just Security (May 6, 2025), https://www.justsecurity.org/113026/us-agreement-el-salvador/ (citing *see J.A.V. v. Trump*, -- F. Supp. 3d --, 2025 WL 1257450 (S.D. Tex. May 1, 2025).

with the Government of El Salvador" to consent to the removal to El Salvador of Venezuelan nationals detained in the United States who are associated with TdA.[5]  "Arrangements were recently reached" as the result of "intensive and delicate negotiations between the United States and El Salvador" to accept the foreign nationals.[6]

14.    This "arrangement" appears to be a non-binding arrangement, as opposed to a binding agreement.  A U.S. official described the arrangement as a "cooperation agreement but in a friendly non-binding fashion."[7]  The proposed arrangement included the United States providing transportation and related costs and paying a one-time maintenance fee of $10 million, about $20,000 per person sent to the facility, according to emails sent between El Salvador President Bukele's brother Ibrajim and Michael Needham, the chief of staff to Secretary of State Marco Rubio, days before the deportation flights departed.[8]  A day before the March 15 flights, El Salvador's government agreed to accept up to 300 alleged Tren de Aragua members for up to one year, as well as two alleged MS-13 members.  Rubio and President Bukele also spoke again prior to the flights.[9]

15.    ProPublica's Request seeks communications between DOS and the U.S. Embassy in El Salvador regarding the transfer, as well as any contracts, such as the "arrangement," involving payment to El Salvador for the detention of the deportees.  *See* Exhibit A.  The public interest in this information is substantial and ongoing.  Every day, news stories have reported on the transfer, and members of Congress have pressed for a copy of the contract.[10]  Second, the

---

[5] Decl. of Michael G. Kozak, ¶ 2 (Mar. 17, 2025), *J.G.G. v. Trump*, Dkt. no. 26-2, Case No. 1:25-cv-00766-JEB (D.D.C.).

[6] *Id.*, ¶ 3.

[7] J. Hansler and P. Alvarez, "Trump admin proposed sending up to 500 alleged Venezuelan gang members during negotiations to use El Salvador's mega-prison" (Apr. 28, 2025), CNN, https://www.cnn.com/2025/04/28/politics/trump-el-savador-prison-negotiations/index.html.

[8] *Id.*

[9] *Id.*

[10] A. Girueroa, "U.S. human rights law likely violated in $6 M payment for El Salvador prison, experts say" (Apr.

arrangement poses a serious risk of the loss of substantial due process rights.  Finally, the records are likely to shed light on the deported aliens' lives and physical safety.  DOS in its 2023 Country Report on Human Rights describes the "harsh and life-threatening prison conditions" that exist in El Salvador.[11]  The executive director of Cristosal, an international human rights group based in El Salvador, described the conditions in CECOT: "there's no doubt that there's an implicit cruelty and dehumanization in the treatment of prisoners there. They leave the lights on 24 hours a day. They restrict the time of like about an hour a day, apparently, that prisoners can leave their cells. The overcrowding is excessive to international standards and the access to toilets and other hygiene clearly seem to be limited…. One of the commonalities among all the maximum-security prisons is that families and lawyers do not have access to the prisoners…. Venezuelan families … aren't able to identify whether their family members are dead or alive."[12]

16.    The documents sought in the Request are of public importance because: 1) they will assist members of Congress and the public to understand policy and the rationale behind it; 2) disclosure of this information is likely to contribute significantly to public understanding of the workings of the federal government.

## PLAINTIFF'S FOIA REQUEST

17.    On March 28, 2025, ProPublica submitted a FOIA Request for all cable traffic between March 1, 2025, and March 28, 2025, from the State Department to and from the U.S.

---

14, 2025), News From the States, https://www.newsfromthestates.com/article/us-human-rights-law-likely-violated-6m-payment-el-salvador-prison-experts-say
[11] 2023 Country Reports on Human Rights Practices: El Salvador, Dept. of State website, https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/el-salvador/.
[12] "The conditions inside the infamous El Salvador prison where deported migrants are held" (Apr. 8, 2025), PBS, https://www.pbs.org/newshour/show/the-conditions-inside-the-infamous-el-salvador-prison-where-deported-migrants-are-held.

Embassy in El Salvador regarding the deportation of unauthorized Venezuelan and El Salvadoran immigrants from the United States to El Salvador for detention in the Centro de Confinamiento del Terrorismo (CECOT).  *See* Exhibit A.  Included in the Request are copies of any contracts or other fiduciary instruments involved in, and any explanation of, the payment of approximately $6 million to the Government of El Salvador by the Government of the United States for the detention of 238 Venezuelan and 23 Salvadoran deportees.

18.    Plaintiff's FOIA Request sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), citing a compelling need to report on the currently unfolding news story regarding deportation of immigrants without due process to a life-threatening prison in El Salvador. ProPublica noted it is an organization primarily engaged in disseminating information, with an urgency to inform the public about matters concerning federal government activity.

19.    DOS acknowledged the Request on April 2, 2025, assigned it number F-2025-13640, placed it in the complex processing track, and denied ProPublica's request for expedited processing, stating the Request did not demonstrate a "compelling need" for the information. *See* Exhibit B.  DOS also stated it would not be able to respond to the Request within 20 days due to "unusual circumstances," namely the need to search for and collect records from other Department offices or Foreign Service posts.

20.    Plaintiff also sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). ProPublica stated that it qualified for a fee waiver because of its role as a non-profit, investigative news organization. ProPublica has no commercial interest in the records requested. *See* Exhibit A.

21.    Plaintiff appealed the denial of expedited processing on April 4, 2025.  *See* Exhibit C.  Plaintiff's Request meets all three requirements under the compelling need stipulation.

1. Imminent threat to the life or physical safety of an individual. The deportation of 261 individuals to CECOT is an imminent threat to their lives and physical safety.  By obtaining information on the U.S. government's policy decisions and contractual obligations involved in sending the deportees to CECOT, ProPublica hopes to inform the public and lawmakers regarding any measures the United States may or may not have taken to protect the detained individuals from the dangerous conditions in CECOT.

2. Information to inform the public about actual or alleged Federal Government activity. Since the deportation became known to the public on March 15, 2025, major news organizations have published more than 500 articles regarding the transfer, according to Factiva, a news indexing service. There is a clear, compelling and urgent need by the public and lawmakers to understand the policy and practical rationale behind the decision to send undocumented immigrants to El Salvador.  ProPublica maintains a publicly accessible website and has 4.9 million unique visitors on average per month,[13] and has the capacity to disseminate information regarding this federal activity.

3. Impairment of due process rights or harm to substantial humanitarian interests.  Due process questions are at the heart of an ongoing federal judicial inquiry into the actions of the Department of Homeland Security and whether it violated deportees' due process rights. *See J.G.G. v. Trump*, No. 1:25-cv-766 (D.D.C. JEB). Failure to release information regarding the government's policy and contractual or fiduciary obligations regarding these individuals is currently impairing their due process rights.

---

[13] ProPublica Annual Report 2024, 2024_ProPublica_AnnualReport_FINAL.pdf.

22.    Since Defendant invoked an extension, its response was due within 30 business days, on May 12, 2025.

23.    Defendant's response to the Appeal of the denial of expedited processing was due within 20 business days, on May 2, 2025.  Had DOS invoked an extension with respect to this appeal (it has not), its response would have been due within 30 business days, on May 16, 2025.

24.    As of the filing of this Complaint, Defendant has not responded to the Request or the Appeal. Plaintiffs have not received the required documentation from Defendant State; nor have they received any responsive records or any other substantive reply to their Request.

25.    Despite its clear obligation under FOIA, Defendant has not provided any substantive determination in response to the Request nor released any records responsive to the Request within the statutory timeframe.

26.    Because Defendant has not complied with the statutory time limits set forth in the FOIA statute, Plaintiffs' administrative remedies are considered exhausted under 5 U.S.C. § 552(a)(6)(C)(i).

### **CAUSE OF ACTION**

**(Violation of Freedom of Information Act)**
**5 U.S.C. § 552(a)**

27.    Plaintiff incorporates the above paragraphs as if set forth fully herein.

28.    ProPublica has a legal right under FOIA to obtain the agency records it requested in the Request.  There is no legal basis for Defendant's failure to timely respond to Plaintiff's Request and provide all records responsive to the Request to Plaintiff.

29.    Defendant DOS's failure to timely release agency records in response to Plaintiff's Request has violated 5 U.S.C. § 552(a)(3)(A).

30.    Defendant DOS has violated 5 U.S.C. § 552(a)(3)(C)-(D) by failing to make reasonable efforts to search for records responsive to Plaintiff's Request.

31.    5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff because Defendant DOS continues to flout FOIA and improperly withhold agency records.  Because Defendant's refusal to respond to Plaintiff's Request prevents Plaintiff from educating the public about the operations of the government, Plaintiff will continue to suffer irreparable injury from Defendant's withholding of government documents subject to Plaintiff's Request in defiance of FOIA mandates.

32.    Section 2201 of Title 28 of the United States Code authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendant's improper withholding of agency records in violation of FOIA.

## **PRAYER FOR RELIEF**

WHEREFORE, ProPublica respectfully requests that the Court award it the following relief:

A.    Enter judgment that Defendant's unlawful withholding of the records request violates FOIA;

B.    Enter an order requiring Defendant to immediately release any and all responsive and not otherwise exempt records to Plaintiff;

C.    Award Plaintiff its reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

D.    Grant such further relief as the Court may deem just and proper.

Dated: New York, New York

May 21, 2025

Respectfully submitted,

_____/s/ James Rosenfeld_____

James Rosenfeld (JR-2256)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020
212-489-8230
jamesrosenfeld@dwt.com

Thomas R. Burke (*pro hac vice application to be filed*)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
415-276-6500
thomasburke@dwt.com

Farrah C. Vazquez (*pro hac vice application to be filed*)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
213-633-6800
farrahvazquez@dwt.com

*Counsel for Plaintiff ProPublica*